```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,)
                              )
 4            v.              )   CRIMINAL CASE NO. JKB-23-00278-1
                              )
 5   CHRISTOPHER K. BENDANN,  )
              Defendant.      )
 6   _____ )

 7

 8                      Thursday, September 14, 2023
                            Courtroom 5A
 9                       Baltimore, Maryland

10                         DETENTION HEARING

11       BEFORE:  THE HONORABLE JAMES K. BREDAR, Chief Judge

12
     On Behalf of the United States:
13
             Colleen E. McGuinn, Esquire
14           Kim Y. Hagan, Esquire
             Assistant United States Attorneys
15           36 S. Charles Street, 4th Floor
             Baltimore, MD 21201
16
     On Behalf of the Defendant:
17
             Kobie Flowers, Esquire
18           Michael Abrams, Esquire
             Brown Goldstein & Levy, LLP
19           120 E. Baltimore Street, Suite 2500
             Baltimore, MD 21202
20
     Also Present:
21
             Manisha Garner, U.S. Probation Services
22           Vickie Adams - Pretrial Supervision Officer

23

24

25           (Computer-aided transcription of stenotype notes)
```

*Kassandra L. McPherson, RPR – Federal Official Court Reporter*
*101 W. Lombard Street, 4th Floor*
*Baltimore, MD 21201*

(410) 962-4544

```
 1                    P R O C E E D I N G
                         2:17 p.m.
 2

 3          MS. MCGUINN:  Good afternoon, Your Honor.

 4      Calling United States of America versus Christopher

 5   Bendann.  This is criminal case number JKB-23-278.  I'm Colleen

 6   McGuinn on behalf of the Government, and standing to my right is

 7   United States Attorney Kim Hagan.

 8          THE COURT:  Thank you.  Good afternoon.  Mr. Flowers?

 9          MR. FLOWERS:  Good afternoon, Your Honor.  Kobie

10   Flowers on behalf of Mr. Christopher Bendann who is present.

11   I'm joined at counsel table by my co-counsel, Mr. Michael

12   Abrams.

13          THE COURT:  Okay.  So the court previously ruled on

14   the defendant's motion to review the detention order.  And the

15   court indicated that it is prepared to enter a release order in

16   this case but only on very stringent conditions.  So we're

17   gathered here today, I suppose first, to discover whether the

18   defendant is in a position to meet the conditions that are set

19   in the release order.

20      So where are we, Mr. Flowers?

21          MR. FLOWERS:  Thank you, Your Honor.  The conditions

22   -- we have some modifications.  We want to inform the court

23   about the conditions.  If the court is unable or unwilling to

24   consider the modifications then, unfortunately for Mr. Bendann's

25   perspective, he will be detained under the court's order.
```

1    THE COURT:  Okay.  Let's first find out where Pretrial

2 Services stands with respect to some fundamental issues.

3    Has the home been inspected?

4    PROBATION OFFICER GARNER:  Your Honor, the home has

5 been inspected.  I did submit an addendum to all parties.  I

6 just learned -- I do have USPO Vickie Adams here present who

7 does handle location monitoring.  And according to a release

8 order that I have right now, Pretrial is not able to monitor

9 smart TV's, gaming stations, things like that.  We can monitor

10 the internet in terms of smart phones, computers, laptops, but

11 we can't monitor --

12    THE COURT:  Yeah.  Well, the Court's intention was to

13 strip the residence of all internet capable devices and

14 technologies with a very few exceptions carved out for apparatus

15 necessary to maintain the fundamental infrastructure of the home

16 like HVAC or an intruder alarm system, that sort of thing.  But

17 anything that was related to entertainment or gaming or anything

18 like that, it was a given would be -- would have to be out of

19 the residence before it qualified.

20    PROBATION OFFICER GARNER:  Okay.  So the smart TVs and

21 gaming stations would need to be out of the house.

22    THE COURT:  Absolutely.

23    PROBATION OFFICER GARNER:  I did understand that the

24 alarm system is not set up through the internet.

25    THE COURT:  I saw that in the submission and that

09/14/2023 Christopher Bendann

 1  makes things easier.

 2      I also understand that there is a landline already up and

 3  functioning in the house.

 4          PROBATION OFFICER GARNER:  There is.

 5          THE COURT:  So it doesn't sound like we've got

 6  problems there, we just need to remove some additional items if

 7  that's the pathway that the defendant is going to go down.

 8          PROBATION OFFICER GARNER:  Okay.

 9          THE COURT:  Does it sound that way to you?

10          PROBATION OFFICER GARNER:  Yes, Your Honor.

11          THE COURT:  Okay.

12          PROBATION OFFICER GARNER:  Would you want them removed

13  prior to him coming in or --

14          THE COURT:  Simultaneous.

15          PROBATION OFFICER GARNER:  Okay.

16          THE COURT:  All at the same time.  I don't think those

17  are going to be our big hurdles, so let's see what our other

18  issues are today.  Should we get past the other issues then

19  yeah, that needs to be the plan.

20          PROBATION OFFICER GARNER:  Okay.

21          THE COURT:  All right.  So -- and did you make

22  inquiries with respect to the proposed third-party custodian and

23  he -- is he acceptable?  I recognize that Pretrial Services

24  continues to recommend detention in the case, but we're past

25  that issue fundamentally, it's now down to whether or not the

1    defendant can comply with these -- what I acknowledge are quite

2    stringent conditions that I've imposed.  One of them is the

3    third-party custodianship with the father specifically.  Is

4    there any reason why Pretrial finds him to be an unacceptable

5    third-party custodian?

6              PROBATION OFFICER GARNER:  We do not find him

7    unacceptable, but we do need to find out if he is acceptable of

8    the conditions.  Because as of last Thursday night --

9              THE COURT:  Right.

10             PROBATION OFFICER GARNER:  -- there was some

11   uncertainty.

12             THE COURT:  Absolutely.  And there are, as I said,

13   many hurdles still ahead.  His willingness to serve is a

14   different question from his suitability.  And perhaps in your

15   broad perspective, willingness is part of suitability.  If

16   that's the case, I get it, but I was actually asking you a

17   narrower question than that and it sounds like he passes muster

18   with pretrial.

19             PROBATION OFFICER GARNER:  Yes, Your Honor.

20             THE COURT:  Very good.

21             So, Mr. Flowers, I need to get over that hurdle first,

22   and that is to find out whether or not court officials found

23   another arrangement acceptable or manageable, and they do

24   provided all the other provisos are satisfied.

25             So where are we?

```
 1            MR. FLOWERS:  Your Honor, I'll perhaps join the court
 2   where the court was just discussing the condition about the
 3   internet access at the home.
 4        As the court is aware, Mr. Bendann, who is present in
 5   court, and that's Mr. Lance Bendann, Mr. Christopher Bendann's
 6   father, he is retired but still runs a small fine arts business.
 7   With that small fine arts business he needs to have access to
 8   his personal computer and, obviously, his cell phone.  And so
 9   that's kind of the first modification with the very, very
10   stringent, very, very difficult internet condition here
11   requiring that internet be completely severed from the house,
12   with the exception of HVAC and basically the functionality of
13   the house.
14        We ask the court to allow Mr. Bendann to at least be able
15   to run his business out of the house as he has.
16            THE COURT:  Well, Mr. Bendann can, of course, run the
17   business out of his house, it's just that to the extent that
18   it's incompatible with his son being there, then his son can't
19   be there.  So we need to view this through the correct lens.
20        The court has no issue whatsoever with Mr. Lance Bendann,
21   and he, by all reports, in reputation is an upstanding citizen
22   and, you know, none of this is about trying to constrain him,
23   it's about an arrangement that could conceivably meet the
24   court's requirements for releasing your client from detention.
25   But no, your client cannot live in a residence where there is
```

1    any capacity whatsoever to access the internet and engage in any

2    sort of communication.

3         I actually accredit the government's main concern in the

4    case, and that is that the defendant might find some way to

5    persist in communication with witnesses or alleged -- an alleged

6    victim, perhaps alleged victims, and that the government on

7    behalf of the public is on very solid ground in insisting that

8    that risk or danger be sufficiently mitigated.

9         Now, the government and I part company at that point

10   because the government's view is the only way to accomplish that

11   is to hold your client in jail.  My view is that your client can

12   be held essentially in jail at home.  When you're in jail you

13   have no access to the internet, period.  Well, if we can

14   replicate that outside of a detention facility, given the

15   totality of the circumstances in this case with your client

16   otherwise, as I said in my order, having been effectively,

17   quote, Exposed and denied now sort of the shroud of secrecy that

18   the government alleges he operated under previously, there can

19   be conditions fashioned where he actually need not reside in the

20   Chesapeake Detention Facility.  But those conditions are quite

21   stringent, including absolutely no access whatsoever to the

22   internet.

23        So, no, there can't be any cell phones in the home.  There

24   cannot be any computers as we broadly understand that term, and

25   there certainly can't be any internet connections through which

```
1  a device by hardwire or wirelessly could connect to the
2  internet.  And the Government has persuaded me that the danger
3  associated with that is too great.  So that's a nonstarter.
4           MR. FLOWERS:  Thank you, Your Honor.  Given the
5  Court's position, if I could just consult with Mr. Chris Bendann
6  and also Mr. Lance Bendann very briefly.
7           THE COURT:  You may.
8      Husher.
9      (Discussion held off the record.)
10          THE COURT:  Back on the record.
11          Mr. Flowers.
12          MR. FLOWERS:  Thank you, Your Honor, for the brief
13 moment to consult with Mr. Chris Bendann and also Mr. Lance
14 Bendann.
15      Given the Court's ruling, unfortunately Mr. Lance Bendann
16 is not going to be able to serve as a third-party custodian.
17      I do want to bring to the court's attention, which I think
18 the court already knows that even over in the super max, or what
19 is, I guess, colloquially called the super max which is actually
20 called the Chesapeake Detention Facility, people have access to
21 tablets over there, including Mr. Chris Bendann.
22      So again, I understand the Court's ruling.  I've obviously
23 read it and --
24          THE COURT:  Well, let me just stop you there.  That's
25 a highly regulated environment where, you know, it's absolutely
```

1   the case that defendants in some correctional facilities are

2   sometimes afforded access to the sorts of devices that

3   Mr. Bendann would be forbidden to be close to were he released.

4   But that's because in a correctional environment where officials

5   have a great deal of experience with navigating the tricky space

6   where you've got to have some internet access in order to run a

7   jail and conduct court functions and so forth, and yet at the

8   same time have to be absolutely certain that detainees there

9   don't have unauthorized or inappropriate communication

10  capability, they are able to design systems and put protections

11  in place to be certain that the sort of safety and security that

12  we're talking about is insured.

13       The court doesn't have that capacity through its pretrial

14  services agency to staff the home and ensure through the

15  oversight of professionals and experts that the only people who

16  are using the internet in the home are people who are otherwise

17  authorized to do so.  So I understand where you're going with

18  that point, but it doesn't persuade the court.

19          MR. FLOWERS:  I understand.  And my understanding is

20  that Pretrial can -- from what Ms. Garner said, they can, I

21  guess they have some type of regulation of the internet.  And,

22  you know, by working under the conditions that the court has

23  set, court certainly appreciates that essentially, at least with

24  respect to the internet, Mr. Chris Bendann is being put in a

25  much more restrictive environment under the court's conditions

1  than he already is in with respect to the internet.  Again, I

2  understand the court's position.

3       THE COURT:  Well, if the internet access is that

4  critical to him then he can elect to remain in CDF and enjoy the

5  internet access that he evidently has there, albeit extremely

6  limited and incapable of being used to contact the population

7  that I am striving so mightily to separate him from.

8       MR. FLOWERS:  And, Your Honor, we agree.  We do not

9  want internet access.  It is, again, simply for Mr. Lance

10  Bendann to have internet access.  But again, I understand the

11  Court's position, and I've been unable to persuade the court to

12  move off of that position, so we will live under the court's

13  order.

14       THE COURT:  Very well.  So the record stands.  The

15  Court has issued it's ruling.  It finds that there are

16  conditions under which the Defendant can be released and the

17  certainty of his further appearances in court is reasonably

18  assured, and the safety of the community is reasonably assured.

19  However, at this moment in time, the Defendant is unable to

20  comply with the stringent conditions that the court has set and

21  which the court has found are minimally necessary to ensure the

22  community safety, and that the Defendant will show up when

23  required.

24       The ruling remains in effect.  Should the Defendant's

25  circumstances change, in terms of his capacity to comply with

09/14/2023 Christopher Bendann

1  the order that the court has indicated it is prepared to enter,

2  then all defense counsel need do is file a motion with the court

3  indicating that circumstances have changed and now the

4  Defendant, together with his father, are in a position to comply

5  and we'll convene another hearing to enter the order.

6       But defense counsel, I think, correctly surmises, although

7  maybe not said explicitly, I think the tone of this hearing

8  indicates that defense counsel correctly surmises that the Court

9  has set its criteria; these are the conditions.  If your client

10 can meet them then he can be released, but the Court doesn't

11 intend to modify its order.

12      All right.  Then the Defendant is remanded to the custody

13 of the marshal pending further proceedings in this case, or his

14 ability to comply with the conditions of release.

15      Counsel are excused.

16      Let's see.  Actually, we were talking about scheduling.  We

17 seem to be -- know a little bit more now about what our status

18 is going to be going forward.  It appears that for the time

19 being at least the Defendant will remain in custody.

20      Where are we on scheduling?  We got into this discussion

21 somewhat last time and then stopped it.  Ms. McGuinn, remind me

22 of where we stood.

23          MS. MCGUINN:  I believe where we stood is Your Honor

24 had been doing a little bit of math in terms of the initial

25 appearance had been on, I believe it is -- it was Friday, August

1  18th, and that the motions, I guess, tolled it for, I think,

2  three days or four days.  So we were still doing that.  We had

3  started talking about discovery deadlines.

4      And then I believe, last I had heard from counsel and that

5  he said in open court, is if his client remained detained, they

6  would not be inclined to toll speedy trial.  So I think we're

7  still looking at the 70 day deadline, and I think we are now

8  currently about 30 days in, ish.

9          THE COURT:  What do you think, Mr. Flowers?  Where do

10  you think we are on speedy trial?

11          MR. FLOWERS:  Well, I think starting at August the

12  18th.

13          THE COURT:  Because he appeared with counsel that day,

14  right?

15          MR. FLOWERS:  Yes, Your Honor.

16          THE COURT:  Okay.  So August 18.

17          MR. FLOWERS:  Right.  Until today, the 14th.

18          THE COURT:  And was there a motion pending for some

19  period of time?

20          MR. FLOWERS:  There was the motion to --

21          THE COURT:  You filed that on, I think, Friday or

22  Thursday.  Was it the first?

23          MS. MCGUINN:  Friday.

24          THE COURT:  It was on Friday the 1st?

25          MS. MCGUINN:  1st.  Sorry.

1          THE COURT:  And when did I rule on that?  I didn't
2     rule on the day after the hearing?
3          MR. FLOWERS:  No.  You ruled on it the day of the
4     hearing.  You ruled on it on September the 7th.
5          MS. MCGUINN:  You issued your ruling as to the hearing
6     the day of the hearing, which I believe had fallen on Thursday.
7          THE COURT:  Check the docket.
8          MR. FLOWERS:  Yeah.  I'm looking at -- your order is
9     issued on September the 7th.
10         MS. MCGUINN:  Right, which is Thursday.
11         THE COURT:  Yeah.  September -- I think that's
12    correct.
13         MR. FLOWERS:  Right.  It's docket 30.  I filed the
14    motion on September the 1st, that's docket 22.
15         THE COURT:  So six days come out of the equation?
16         MR. FLOWERS:  Yes.
17         MS. MCGUINN:  Yes.
18         THE COURT:  By agreement of counsel that's right?
19         MR. FLOWERS:  Right.
20         THE COURT:  Okay.  So August 18 to September 14 would
21    be 31 minus four, is 27, minus 6 is 21.  I think we're on day
22    21, counsel.  Agreed?
23         MS. MCGUINN:  Yes, Your Honor.
24         MR. FLOWERS:  I think that's correct.
25         MS. MCGUINN:  That sounds --

```
 1          MR. FLOWERS:  Correct, Your Honor.  Although the math
 2   is -- you're quicker than I am on that, but I will defer to the
 3   court on that.
 4          THE COURT:  Only because it had to do with 70, and
 5   I've been doing arithmetic around the number 70 for about the
 6   last 40 years.
 7          MR. FLOWERS:  And for me it's only been about 25, so
 8   you're better than I am.
 9          THE COURT:  So 70 minus 21; 49 days.  Okay.  So trial
10   has to start 49 days from today.  We have a Julian calendar?
11   It's the 14th.  30 days past September.  Okay, so it's 30.
12   Okay.  That's the -- that's October 14, and then 19 more, that's
13   16.  Looks like November 3rd to me.
14          MS. MCGUINN:  Friday, November 3rd?
15          THE COURT:  Yeah, I think trial has to start.  But
16   we'll put a cushion in there and say the 2nd.
17          Okay.  As it happens, Ms. McGuinn, courtesy of
18   Mr. Hanlon and Ms. McLane I think I'm going to be in a position
19   to do this.
20          Here we go.  We're going to pick the jury in this case
21   beginning on Monday, October 23rd.  So that's the start of our
22   trial is October 23rd.
23          MS. MCGUINN:  Your Honor, I will be out of the country
24   on October 23rd.
25          THE COURT:  You'll have to get somebody to cover you.
```

```
 1  We're honed in.

 2          MS. MCGUINN:  Okay.

 3          THE COURT:  October 23rd.  Okay.  Pretrial conference

 4  in the case Friday, October 13th, 10 a.m., okay.

 5          Your deadline for your pretrial filings, counsel, will

 6  be Friday, October 6th, close of business, to include your

 7  proposed voir dire, your proposed preliminary instructions to

 8  the jury, your proposed final jury instructions, and any motions

 9  in limine.  Responses to motions in limine are due close of

10  business Tuesday, October 10.

11      Where's discovery stand, Ms. McGuinn?

12          MS. MCGUINN:  Your Honor, the Government has sent what

13  we have currently in discovery.  There are some other matters

14  that are still ongoing with relation to Apple and expert witness

15  disclosure, but those will be forthcoming shortly.

16          THE COURT:  Okay.  Last time we were together I

17  entertained the possibility of a superseding indictment.  You're

18  not required to respond to my queries in that regard, but if you

19  want to you may.

20          MS. MCGUINN:  I cannot respond to that at this time,

21  Your Honor.

22          THE COURT:  Okay.  So forensic examination of devices

23  complete?  Nearly complete?

24          MS. MCGUINN:  They're still ongoing.  The forensic

25  examination to the iCloud as it relates to the five charged
```

1  counts is complete, with some of that discovery to be

2  forthcoming.  The devices themselves are not done, so that's why

3  I can't comment as to Your Honor's question.

4         THE COURT:  All right.  Well, discovery relating to

5  these counts that are currently of record now needs to be

6  finished up.  So, today is the 14th of October.

7         MR. FLOWERS:  September, Your Honor.

8         THE COURT:  September, excuse me.  So let's have all

9  of your discovery produced no later than Friday, the 22nd of

10 September.

11    Any pretrial motions that the defendant may wish to file

12 are due the following Friday, the 29th of September.

13    Government response is due a week later on the 6th, the

14 same day as your pretrial submissions.

15    Replies due on Wednesday, October 11.

16    And the motions hearing, if any motions are filed, will be

17 conducted on October the 13th, simultaneous with the pretrial

18 conference and the hearing on any motions in limine.  That'll be

19 an omnibus hearing on Friday the 13th starting at 10 a.m. and

20 going all day.

21    Ms. McGuinn, should the Defendant file a pretrial motion or

22 motions, the Court will immediately entertain a motion to

23 continue the trial.

24         MS. MCGUINN:  Thank you, Your Honor.

25         THE COURT:  And would likely grant it and would then

1   likely alter this schedule.  But this is the course that we will

2   be on, essentially, on the assumption of no pretrial motions.

3       Mr. Flowers.

4           MR. FLOWERS:  Two points.  One about the pretrial

5   motions and then one just a clarification on the jury

6   instructions.

7       I expect that if the Government files a motion to toll the

8   speedy trial clock because pretrial motions have been filed, the

9   Court will also entertain our opposition to that.

10      And then -- and again, I understand what the Court has kind

11  of intimated as far where it's leaning.  So I just want to make

12  sure that that was known to the Court and known to the

13  Government.

14          THE COURT:  Well, I'll hear you on it, but I don't

15  remember, in the 35 years that I've been at this, a situation

16  where a pretrial motion was filed in a circumstance where speedy

17  trial was being enforced or speedy trial wasn't tolled.

18          MR. FLOWERS:  And I know the case law on this, Your

19  Honor, is very, very difficult, but I do know there are some

20  cases that go in the accused favor.  So that's just one point, I

21  just wanted to bring that to the Court's attention and the

22  Government's attention.

23      And then the only other -- just question of clarification.

24  As the Court indicated that --

25          THE COURT:  Let me just put this on the record right

1  now.  And that is that the Court would expect to begin tolling

2  speedy trial upon the filing of a pretrial motion by the

3  Defendant.  The Defendant should expect that that is the finding

4  -- that the Court would find, under the Speedy Trial Act, that

5  the tolling was necessary and appropriate, and that the

6  Defendant should anticipate that that's where the Court is

7  headed.  And accordingly, if the Defendant objects to such

8  tolling, the Defendant should file his objections simultaneous

9  with the motion.

10       No objection accompanying the motion, the Court is going to

11  assume that the Defendant does not object to tolling.

12            MR. FLOWERS:  Very well, Your Honor.  Thank you for

13  that clarification.

14       And then again, just, I think, another clarification was

15  the Court indicated on October 6th that the parties are to file

16  their preliminary jury instructions and jury instructions.

17            THE COURT:  Right.

18            MR. FLOWERS:  I'm not sure I fully appreciate the

19  difference between the two.

20            THE COURT:  The preliminary jury instructions are very

21  simple.  First of all, you should get the Court's form

22  instructions --

23            MR. FLOWERS:  Yeah.

24            THE COURT:  -- on all of this, and understand that

25  especially on the standard instructions, the Court almost never

1    departs from its standard instructions.  And so it's up to

2    counsel if they want to put some labor into rewriting how the

3    Court has instructed on, you know, general credibility or direct

4    and circumstantial evidence, feel free.  My recent track record

5    is I pretty much always give the same instructions on those

6    points.  So you want to get ahold of those forms.

7                    MR. FLOWERS:  Yep.

8                    THE COURT:  And then where there's tinkering is on the

9    counts.  And that's probably where the parties are going to want

10   to spend most of their time.

11       I do require counsel to meet and confer on instructions

12   first, agree to the full extent they're able, and then submit

13   those instructions on which there is agreement, and then only

14   separately submit those where there's disagreement.  That's the

15   only separate submission that should come in.

16       With respect to the distinction between preliminary and

17   final jury instructions, the preliminary instructions are the

18   instructions that the Court gives after voir dire and before

19   opening statements.  They're about eight pages in length, it's a

20   very standard instruction.  And from one trial to the next,

21   literally only two or three sentences in either the first or

22   second paragraph of the instructions ever changes, and it's just

23   the description of the offense.

24       So counsel typically want to pay a lot of attention to that

25   and how that offense or offenses is characterized, and then

1    beyond that there's really nothing else to do on the preliminary

2    instructions.

3        But those are all due; voir dire, preliminary instructions,

4    final jury instructions, and the motions in limine.  And in this

5    case, did I -- was that the final -- I can't remember what the

6    motions deadline is in the case.  Something -- well, no, it's

7    the motions hearing that is simultaneous with the pretrial

8    conference on the 13th.  Sorry, got ahead of myself.

9        Anything else, Mr. Flowers?

10           MR. FLOWERS:  Right.  And I just want to make sure

11   I've got this right.  So the -- I've got pretrial motions are

12   due on October the 6th, but then there was also a September 29th

13   pretrial motion's date.

14           THE COURT:  29th for your regular pretrial motions.

15           MR. FLOWERS:  Gotcha.

16           THE COURT:  October the 6th, I think, was just the

17   motions in limine together with the other submissions.  And any

18   response to the pretrial motions from the Government.

19           MR. FLOWERS:  Thank you, Your Honor.

20           THE COURT:  Okay.  Are we good?

21           MR. FLOWERS:  Yes.

22           THE COURT:  Okay.  Anything else we can productively

23   address today, Ms. McGuinn?

24           MS. MCGUINN:  No, Your Honor.  Thank you.

25           THE COURT:  Mr. Flowers?

1          MR. FLOWERS:  Nothing from the Defendant, Your Honor.

2     Thank you.

3          THE COURT:  The Defendant's remanded to the custody of

4     the marshal.  Counsel are excused.  Court's in recess.

5          Thank you.

6          (The proceedings concluded at 2:50 p.m.)

7

8

9

10

11

12

13

14

15               CERTIFICATE OF OFFICIAL REPORTER

16

17          I, Kassandra L. McPherson, Registered Professional
      Reporter, in and for the United States District Court for the
18    District of Maryland, do hereby certify, pursuant to 28 U.S.C. §
      753, that the foregoing is a true and correct transcript of the
19    stenographically-reported proceedings held in the above-entitled
      matter and that the transcript page format is in conformance
20    with the regulations of the Judicial Conference of the United
      States.

21
                        Dated this 15th day of December 2023.
22
                             -S-
23               _____
                 KASSANDRA L. MCPHERSON, RPR
24               FEDERAL OFFICIAL COURT REPORTER

25

**1**

**10** [3] - 15:4, 15:10, 16:19
**11** [1] - 16:15
**120** [1] - 1:19
**13th** [4] - 15:4, 16:17, 16:19, 20:8
**14** [3] - 1:8, 13:20, 14:12
**14th** [3] - 12:17, 14:11, 16:6
**15th** [1] - 21:20
**16** [1] - 14:13
**18** [2] - 12:16, 13:20
**18th** [2] - 12:1, 12:12
**19** [1] - 14:12
**1st** [3] - 12:24, 12:25, 13:14

**2**

**2023** [2] - 1:8, 21:20
**21** [3] - 13:21, 13:22, 14:9
**21201** [1] - 1:15
**21202** [1] - 1:19
**22** [1] - 13:14
**22nd** [1] - 16:9
**23rd** [4] - 14:21, 14:22, 14:24, 15:3
**25** [1] - 14:7
**2500** [1] - 1:19
**27** [1] - 13:21
**28** [1] - 21:17
**29th** [3] - 16:12, 20:12, 20:14
**2:17** [1] - 2:1
**2:50** [1] - 21:6
**2nd** [1] - 14:16

**3**

**30** [4] - 12:8, 13:13, 14:11
**31** [1] - 13:21
**35** [1] - 17:15
**36** [1] - 1:15
**3rd** [2] - 14:13, 14:14

**4**

**40** [1] - 14:6
**49** [2] - 14:9,

14:10
**4th** [1] - 1:15

**5**

**5A** [1] - 1:8

**6**

**6** [1] - 13:21
**6th** [5] - 15:6, 16:13, 18:15, 20:12, 20:16

**7**

**70** [4] - 12:7, 14:4, 14:5, 14:9
**753** [1] - 21:17
**7th** [2] - 13:4, 13:9

**A**

**a.m.** [2] - 15:4, 16:20
**ability** [1] - 11:14
**able** [5] - 3:8, 6:14, 8:16, 9:10, 19:12
**above-entitled** [1] - 21:18
**Abrams** [2] - 1:18, 2:12
**absolutely** [5] - 3:22, 5:12, 7:21, 8:25, 9:8
**acceptable** [3] - 4:23, 5:7, 5:23
**access** [12] - 6:3, 6:7, 7:1, 7:13, 7:21, 8:20, 9:2, 9:6, 10:3, 10:5, 10:9, 10:10
**accompanying** [1] - 18:10
**accomplish** [1] - 7:10
**according** [1] - 3:7
**accordingly** [1] - 18:7
**accredit** [1] - 7:3
**accused** [1] - 17:20
**acknowledge** [1] - 5:1
**Act** [1] - 18:4
**Adams** [1] - 1:22, 3:6
**addendum** [1] -

3:5
**additional** [1] - 4:6
**address** [1] - 20:23
**afforded** [1] - 9:2
**afternoon** [3] - 2:3, 2:8, 2:9
**agency** [1] - 9:14
**agree** [2] - 10:8, 19:12
**agreed** [1] - 13:22
**agreement** [2] - 13:18, 19:13
**ahead** [2] - 5:13, 20:8
**ahold** [1] - 19:6
**aided** [1] - 1:25
**alarm** [2] - 3:16, 3:24
**albeit** [1] - 10:5
**alleged** [3] - 7:5, 7:6
**alleges** [1] - 7:18
**allow** [1] - 6:14
**almost** [1] - 18:25
**alter** [1] - 17:1
**AMERICA** [1] - 1:3
**America** [1] - 2:4
**anticipate** [1] - 18:6
**apparatus** [1] - 3:14
**appearance** [1] - 11:25
**appearances** [1] - 10:17
**appeared** [1] - 12:13
**Apple** [1] - 15:14
**appreciate** [1] - 18:18
**appreciates** [1] - 9:23
**appropriate** [1] - 18:5
**arithmetic** [1] - 14:5
**arrangement** [2] - 5:23, 6:23
**arts** [2] - 6:6, 6:7
**Assistant** [1] - 1:14
**associated** [1] - 8:3
**assume** [1] - 18:11
**assumption** [1] - 17:2

3:5
**assured** [2] - 10:18
**attention** [4] - 8:17, 17:21, 17:22, 19:24
**Attorney** [1] - 2:7
**Attorneys** [1] - 1:14
**August** [4] - 11:25, 12:11, 11:16, 13:20
**authorized** [1] - 9:17
**aware** [1] - 6:4

**B**

**Baltimore** [4] - 1:9, 1:15, 1:19, 1:19
**BEFORE** [1] - 1:11
**begin** [1] - 18:1
**beginning** [1] - 14:21
**behalf** [3] - 2:6, 2:10, 7:7
**Behalf** [2] - 1:12, 1:16
**Bendann** [16] - 2:5, 2:10, 6:4, 6:5, 6:14, 6:16, 6:20, 8:5, 8:6, 8:13, 8:14, 8:15, 8:21, 9:3, 9:24, 10:10
**BENDANN** [1] - 1:5
**Bendann's** [2] - 2:24, 6:5
**better** [1] - 14:8
**between** [2] - 18:19, 19:16
**beyond** [1] - 20:1
**big** [1] - 4:17
**bit** [2] - 11:17, 11:24
**BREDAR** [1] - 1:11
**brief** [1] - 8:12
**briefly** [1] - 8:6
**bring** [2] - 8:17, 17:21
**broad** [1] - 5:15
**broadly** [1] - 7:24
**Brown** [1] - 1:18
**business** [6] - 6:6, 6:7, 6:15, 6:17, 15:6, 15:10

**C**

**calendar** [1] - 14:10
**cannot** [3] - 6:25, 7:24, 15:20
**capability** [1] - 9:10
**capable** [1] - 3:13
**capacity** [3] - 7:1, 9:13, 10:25
**carved** [1] - 3:14
**CASE** [1] - 1:4
**case** [13] - 2:5, 2:16, 4:24, 5:16, 7:4, 7:15, 9:1, 11:13, 14:20, 15:4, 17:18, 20:5, 20:6
**cases** [1] - 17:20
**CDF** [1] - 10:4
**cell** [2] - 6:8, 7:23
**certain** [2] - 9:8, 9:11
**certainly** [2] - 7:25, 9:23
**certainty** [1] - 10:17
**CERTIFICATE** [1] - 21:14
**certify** [1] - 21:17
**change** [1] - 10:25
**changed** [1] - 11:3
**changes** [1] - 19:22
**characterized** [1] - 19:25
**charged** [1] - 15:25
**Charles** [1] - 1:15
**check** [1] - 13:7
**Chesapeake** [2] - 7:20, 8:20
**Chief** [1] - 1:11
**Chris** [4] - 8:5, 8:13, 8:21, 9:24
**Christopher** [2] - 2:4, 2:10, 6:5
**CHRISTOPHER** [1] - 1:5
**circumstance** [1] - 17:16
**circumstances** [3] - 7:15, 10:25, 11:3
**circumstantial** [1] - 19:4
**citizen** [1] - 6:21

**clarification** [4] - 17:5, 17:23, 18:13, 18:14
**client** [7] - 6:24, 6:25, 7:11, 7:15, 11:9, 12:5
**clock** [1] - 17:8
**close** [3] - 9:3, 15:6, 15:9
**co** [1] - 2:11
**co-counsel** [1] - 2:11
**Colleen** [1] - 1:13, 2:5
**colloquially** [1] - 8:19
**coming** [1] - 4:13
**comment** [1] - 16:3
**communication** [3] - 7:2, 7:5, 9:9
**community** [2] - 10:18, 10:22
**company** [1] - 7:9
**complete** [3] - 15:23, 16:1
**completely** [1] - 6:11
**comply** [5] - 5:1, 10:20, 10:25, 11:4, 11:14
**Computer** [1] - 1:25
**computer** [1] - 6:8
**Computer-aided** [1] - 1:25
**computers** [2] - 3:10, 7:24
**conceivably** [1] - 6:23
**concern** [1] - 7:3
**concluded** [1] - 21:6
**condition** [2] - 6:2, 6:10
**conditions** [4] - 2:16, 2:18, 2:21, 2:23, 5:2, 5:8, 7:19, 7:20, 9:22, 9:25, 10:16, 10:20, 11:9, 11:14
**conduct** [1] - 9:7
**conducted** [1] - 16:17
**confer** [1] - 19:11
**Conference** [1] - 21:19
**conference** [3] - 15:3, 16:18,

20:8
**conformance** [1] - 21:18
**connect** [1] - 8:1
**connections** [1] - 7:25
**consider** [1] - 2:24
**constrain** [1] - 6:22
**consult** [2] - 8:5, 8:13
**contact** [1] - 10:6
**continue** [1] - 16:23
**continues** [1] - 4:24
**convene** [1] - 11:5
**correct** [5] - 6:19, 13:12, 13:24, 14:1, 21:17
**correctional** [2] - 9:1, 9:4
**correctly** [2] - 11:6, 11:8
**counsel** [15] - 2:11, 11:2, 11:6, 11:8, 11:15, 12:4, 12:13, 13:18, 13:22, 15:5, 19:2, 19:11, 19:24, 21:4
**country** [1] - 14:23
**counts** [3] - 16:1, 16:5, 19:9
**course** [2] - 6:16, 17:1
**Court** [17] - 10:15, 11:8, 11:10, 16:22, 17:9, 17:10, 17:12, 17:24, 18:1, 18:4, 18:6, 18:10, 18:15, 18:25, 19:3, 19:18, 21:16
**COURT** [57] - 1:1, 2:8, 2:13, 3:1, 3:12, 3:22, 3:25, 4:5, 4:9, 4:11, 4:14, 4:16, 4:21, 5:9, 5:12, 5:20, 6:16, 8:7, 8:10, 8:24, 10:3, 10:14, 12:9, 12:13, 12:16, 12:18, 12:21,

12:24, 13:1, 13:7, 13:11, 13:15, 13:18, 13:20, 14:4, 14:9, 14:15, 14:25, 15:3, 15:16, 15:22, 16:4, 16:8, 16:25, 17:14, 17:25, 18:17, 18:20, 18:24, 19:8, 20:14, 20:16, 20:20, 20:22, 20:25, 21:3, 21:23
**court** [25] - 2:13, 2:15, 2:22, 2:23, 5:22, 6:1, 6:2, 6:4, 6:5, 6:14, 6:20, 8:18, 9:7, 9:13, 9:18, 9:22, 9:23, 10:11, 10:17, 10:20, 10:21, 11:1, 11:2, 12:5, 14:3
**court's** [7] - 2:25, 6:24, 8:17, 9:25, 10:2, 10:12, 21:4
**Court's** [7] - 3:12, 8:5, 8:15, 8:22, 10:11, 17:21, 18:21
**courtesy** [1] - 14:17
**Courtroom** [1] - 1:8
**cover** [1] - 14:25
**credibility** [1] - 19:3
**CRIMINAL** [1] - 1:4
**criminal** [1] - 2:5
**criteria** [1] - 11:9
**critical** [1] - 10:4
**cushion** [1] - 14:16
**custodian** [3] - 4:22, 5:5, 8:16
**custodianship** [1] - 5:3
**custody** [3] - 11:12, 11:19, 21:3

## D

**danger** [2] - 7:8, 8:2
**date** [1] - 20:13

**Dated** [1] - 21:20
**days** [7] - 12:2, 12:8, 13:15, 14:9, 14:10, 14:11
**deadline** [3] - 12:7, 15:5, 20:6
**deadlines** [1] - 12:3
**deal** [1] - 9:5
**December** [1] - 21:20
**Defendant** [16] - 1:5, 1:16, 10:16, 10:19, 10:22, 11:4, 11:12, 11:19, 16:21, 18:3, 18:6, 18:7, 18:8, 18:11, 21:1
**defendant** [5] - 2:18, 4:7, 5:1, 7:4, 16:11
**Defendant's** [2] - 10:24, 21:3
**defendant's** [1] - 2:14
**defendants** [1] - 9:1
**defense** [3] - 11:2, 11:6, 11:8
**defer** [1] - 14:2
**denied** [1] - 7:17
**departs** [1] - 19:1
**description** [1] - 19:23
**design** [1] - 9:10
**detained** [2] - 2:25, 12:5
**detainees** [1] - 9:8
**detention** [4] - 2:14, 4:24, 6:24, 7:14
**DETENTION** [1] - 1:10
**Detention** [2] - 7:20, 8:20
**device** [1] - 8:1
**devices** [4] - 3:13, 9:2, 15:22, 16:2
**difference** [1] - 18:19
**different** [1] - 5:14
**difficult** [2] - 6:10, 17:19
**dire** [3] - 15:7, 19:18, 20:3
**direct** [1] - 19:3
**disagreement** [1]

- 19:14
**disclosure** [1] - 15:15
**discover** [1] - 2:17
**discovery** [6] - 12:3, 15:11, 15:13, 16:1, 16:4, 16:9
**discussing** [1] - 6:2
**discussion** [2] - 8:9, 11:20
**distinction** [1] - 19:16
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 21:16, 21:17
**DIVISION** [1] - 1:2
**docket** [3] - 13:7, 13:13, 13:14
**done** [1] - 16:2
**down** [2] - 4:7, 4:25
**due** [6] - 15:9, 16:12, 16:13, 16:15, 20:3, 20:12

## E

**easier** [1] - 4:1
**effect** [1] - 10:24
**effectively** [1] - 7:16
**eight** [1] - 19:19
**either** [1] - 19:21
**elect** [1] - 10:4
**enforced** [1] - 17:17
**engage** [1] - 7:1
**enjoy** [1] - 10:4
**ensure** [2] - 9:14, 10:21
**enter** [3] - 2:15, 11:1, 11:5
**entertain** [2] - 16:22, 17:9
**entertained** [1] - 15:17
**entertainment** [1] - 3:17
**entitled** [1] - 21:18
**environment** [3] - 8:25, 9:4, 9:25
**equation** [1] - 13:15
**especially** [1]

18:25
**Esquire** [4] - 1:13, 1:14, 1:17, 1:18
**essentially** [3] - 7:12, 9:23, 17:2
**evidence** [1] - 19:4
**evidently** [1] - 10:5
**examination** [2] - 15:22, 15:25
**exception** [1] - 6:12
**exceptions** [1] - 3:14
**excuse** [1] - 16:8
**excused** [2] - 11:15, 21:4
**expect** [3] - 17:7, 18:1, 18:3
**experience** [1] - 9:5
**expert** [1] - 15:14
**experts** [1] - 9:15
**explicitly** [1] - 11:7
**Exposed** [1] - 7:17
**extent** [2] - 6:17, 19:12
**extremely** [1] - 10:5

## F

**facilities** [1] - 9:1
**facility** [1] - 7:14
**Facility** [2] - 7:20, 8:20
**fallen** [1] - 13:6
**far** [1] - 17:11
**fashioned** [1] - 7:19
**father** [3] - 5:3, 6:6, 11:4
**favor** [1] - 17:20
**FEDERAL** [1] - 21:23
**few** [1] - 3:14
**file** [5] - 11:2, 16:12, 16:21, 18:8, 18:15
**filed** [5] - 12:21, 13:13, 16:16, 17:8, 17:16
**files** [1] - 17:7
**filing** [1] - 18:2
**filings** [1] - 15:5
**final** [4] - 15:8, 19:17, 20:4,

20:5
**fine** [2] - 6:6, 6:7
**finished** [1] - 16:6
**first** [8] - 2:17, 3:1, 5:21, 6:9, 12:22, 18:21, 19:12, 19:21
**five** [1] - 15:25
**Floor** [1] - 1:15
**flowers** [6] - 2:20, 5:21, 8:11, 17:3, 20:9, 20:25
**FLOWERS** [31] - 2:9, 2:21, 6:1, 8:4, 8:12, 9:19, 10:8, 12:11, 12:15, 12:17, 12:20, 13:3, 13:8, 13:13, 13:16, 13:19, 13:24, 14:1, 14:7, 16:7, 17:4, 17:18, 18:12, 18:18, 18:23, 19:7, 20:10, 20:15, 20:19, 20:21, 21:1
**Flowers** [4] - 1:17, 2:8, 2:10, 12:9
**following** [1] - 16:12
**FOR** [1] - 1:1
**forbidden** [1] - 9:3
**foregoing** [1] - 21:17
**forensic** [2] - 15:22, 15:24
**form** [1] - 18:21
**format** [1] - 21:18
**forms** [1] - 19:6
**forth** [1] - 9:7
**forthcoming** [2] - 15:15, 16:2
**forward** [1] - 11:18
**four** [2] - 12:2, 13:21
**free** [1] - 19:4
**Friday** [10] - 11:25, 12:21, 12:23, 12:24, 14:14, 15:4, 15:6, 16:9, 16:12, 16:19
**full** [1] - 19:12
**fully** [1] - 18:18
**functionality** [1] - 6:12

**functioning** [1] - 4:3
**functions** [1] - 9:7
**fundamental** [2] - 3:2, 3:15
**fundamentally** [1] - 4:25

### G

**gaming** [3] - 3:9, 3:17, 3:21
**Garner** [2] - 1:21, 9:20
**GARNER** [12] - 3:4, 3:20, 3:23, 4:4, 4:8, 4:10, 4:12, 4:15, 4:20, 5:6, 5:10, 5:19
**gathered** [1] - 2:17
**general** [1] - 19:3
**given** [4] - 3:18, 7:14, 8:4, 8:15
**Goldstein** [1] - 1:18
**gotcha** [1] - 20:15
**government** [4] - 7:6, 7:9, 7:18, 16:13
**Government** [6] - 2:6, 8:2, 15:12, 17:7, 17:13, 20:18
**government's** [2] - 7:3, 7:10
**Government's** [1] - 17:22
**grant** [1] - 16:25
**great** [2] - 8:3, 9:5
**ground** [1] - 7:7
**guess** [3] - 8:19, 9:21, 12:1

### H

**Hagan** [2] - 1:14, 2:7
**handle** [1] - 3:7
**Hanlon** [1] - 14:18
**hardwire** [1] - 8:1
**headed** [1] - 18:7
**hear** [1] - 17:14
**heard** [1] - 12:4
**HEARING** [1] - 1:10
**hearing** [10] - 11:5, 11:7, 13:2, 13:4, 13:5, 13:6, 16:16, 16:18,

16:19, 20:7
**held** [3] - 7:12, 8:9, 21:18
**hereby** [1] - 21:17
**highly** [1] - 8:25
**hold** [1] - 7:11
**home** [8] - 3:3, 3:4, 3:15, 6:3, 7:12, 7:23, 9:14, 9:16
**honed** [1] - 15:1
**Honor** [24] - 2:3, 2:9, 2:21, 3:4, 4:10, 5:19, 6:1, 8:4, 8:12, 10:8, 11:23, 12:15, 13:23, 14:1, 14:23, 15:12, 15:21, 16:7, 16:24, 17:19, 18:12, 20:19, 20:24, 21:1
**Honor's** [1] - 16:3
**HONORABLE** [1] - 1:11
**house** [6] - 3:21, 4:3, 6:11, 6:13, 6:15, 6:17
**hurdle** [1] - 5:21
**hurdles** [2] - 4:17, 5:13
**husher** [1] - 8:8
**HVAC** [2] - 3:16, 6:12

### I

**iCloud** [1] - 15:25
**immediately** [1] - 16:22
**imposed** [1] - 5:2
**IN** [1] - 1:1
**inappropriate** [1] - 9:9
**incapable** [1] - 10:6
**inclined** [1] - 12:6
**include** [1] - 15:6
**including** [2] - 7:21, 8:21
**incompatible** [1] - 6:18
**indicated** [4] - 2:15, 11:1, 17:24, 18:15
**indicates** [1] - 11:8
**indicating** [1] - 11:3
**indictment** [1] -

15:17
**inform** [1] - 2:22
**infrastructure** [1] - 3:15
**initial** [1] - 11:24
**inquiries** [1] - 4:22
**insisting** [1] - 7:7
**inspected** [2] - 3:3, 3:5
**instructed** [1] - 19:3
**instruction** [1] - 19:20
**instructions** [19] - 15:7, 15:8, 17:6, 18:16, 18:20, 18:22, 18:25, 19:1, 19:5, 19:11, 19:13, 19:17, 19:18, 19:22, 20:2, 20:3, 20:4
**insured** [1] - 9:12
**intend** [1] - 11:11
**intention** [1] - 3:12
**internet** [20] - 3:10, 3:13, 3:24, 6:3, 6:10, 6:11, 7:1, 7:13, 7:22, 7:25, 8:2, 9:6, 9:16, 9:21, 9:24, 10:1, 10:3, 10:5, 10:9, 10:10
**intimated** [1] - 17:11
**intruder** [1] - 3:16
**ish** [1] - 12:8
**issue** [2] - 4:25, 6:20
**issued** [3] - 10:15, 13:5, 13:9
**issues** [3] - 3:2, 4:18
**items** [1] - 4:6

### J

**jail** [4] - 7:11, 7:12, 9:7
**JAMES** [1] - 1:11
**JKB-23-00278-1** [1] - 1:4
**JKB-23-278** [1] - 2:5
**join** [1] - 6:1
**joined** [1] - 2:11
**Judge** [1] - 1:11
**Judicial** [1] -

21:19
**Julian** [1] - 14:10
**jury** [9] - 14:20, 15:8, 17:5, 18:16, 18:20, 19:17, 20:4

### K

**Kim** [2] - 1:14, 2:7
**kind** [2] - 6:9, 17:11
**known** [2] - 17:12
**knows** [1] - 8:18
**Kobie** [2] - 1:17, 2:9

### L

**labor** [1] - 19:2
**Lance** [6] - 6:5, 6:20, 8:6, 8:13, 8:15, 10:9
**landline** [1] - 4:2
**laptops** [1] - 3:10
**last** [5] - 5:8, 11:21, 12:4, 14:6, 15:16
**law** [1] - 17:18
**leaning** [1] - 17:11
**learned** [1] - 3:6
**least** [3] - 6:14, 9:23, 11:19
**length** [1] - 19:19
**lens** [1] - 6:19
**Levy** [1] - 1:18
**likely** [2] - 16:25, 17:1
**limine** [5] - 15:9, 16:18, 20:4, 20:17
**limited** [1] - 10:6
**literally** [1] - 19:21
**live** [2] - 6:25, 10:12
**LLP** [1] - 1:18
**location** [1] - 3:7
**looking** [2] - 12:7, 13:8
**looks** [1] - 14:13

### M

**main** [1] - 7:3
**maintain** [1] - 3:15
**manageable** [1] - 5:23

Manisha [1] - 1:21
**marshal** [2] - 11:13, 21:4
**MARYLAND** [1] - 1:1
**Maryland** [2] - 1:9, 21:17
**math** [2] - 11:24, 14:1
**matter** [1] - 21:18
**matters** [1] - 15:13
**max** [2] - 8:18, 8:19
**MCGUINN** [17] - 2:3, 11:23, 12:23, 12:25, 13:5, 13:10, 13:17, 13:23, 13:25, 14:14, 14:23, 15:2, 15:12, 15:20, 15:24, 16:24, 20:24
**McGuinn** [7] - 1:13, 2:6, 11:21, 14:17, 15:11, 16:21, 20:23
**McLane** [1] - 14:18
**MCPHERSON** [1] - 21:22
**McPherson** [1] - 21:16
**MD** [2] - 1:15, 1:19
**meet** [4] - 2:18, 6:23, 11:10, 19:11
**Michael** [2] - 1:18, 2:11
**might** [1] - 7:4
**mightily** [1] - 10:7
**minimally** [1] - 10:21
**minus** [3] - 13:21, 14:9
**mitigated** [1] - 7:8
**modification** [1] - 6:9
**modifications** [2] - 2:22, 2:24
**modify** [1] - 11:11
**moment** [2] - 8:13, 10:19
**Monday** [1] - 14:21
**monitor** [3] - 3:8, 3:9, 3:11
**monitoring** [1] -

3:7
**most** [1] - 19:10
**motion** [12] - 2:14, 11:2, 12:18, 12:20, 13:14, 16:22, 17:7, 17:16, 18:2, 18:9, 18:10
**motion's** [1] - 20:13
**motions** [18] - 12:1, 15:8, 15:9, 16:11, 16:16, 16:18, 16:22, 17:2, 17:5, 17:8, 20:4, 20:6, 20:7, 20:11, 20:14, 20:17, 20:18
**move** [1] - 10:12
**muster** [1] - 5:17

### N

**narrower** [1] - 5:17
**navigating** [1] - 9:5
**nearly** [1] - 15:23
**necessary** [3] - 3:15, 10:21, 18:5
**need** [7] - 3:21, 4:6, 5:7, 5:21, 6:19, 7:19, 11:2
**needs** [3] - 4:19, 6:7, 16:5
**never** [1] - 18:25
**next** [1] - 19:20
**night** [1] - 5:8
**NO** [1] - 1:4
**none** [1] - 6:22
**nonstarter** [1] - 8:3
**NORTHERN** [1] - 1:2
**notes** [1] - 1:25
**nothing** [2] - 20:1, 21:1
**November** [2] - 14:13, 14:14
**number** [2] - 2:5, 14:5

### O

**object** [1] - 18:11
**objection** [1] - 18:10
**objections** [1] -

18:8
**objects** [1] - 18:7
**obviously** [2] -
6:8, 8:22
**October** [14] -
14:12, 14:21,
14:22, 14:24,
15:3, 15:4, 15:6,
15:10, 16:6,
16:15, 16:17,
18:15, 20:12,
20:16
**OF** [3] - 1:1, 1:3,
21:14
**offense** [2] -
19:23, 19:25
**offenses** [1] -
19:25
**Officer** [1] - 1:22
**OFFICER** [12] -
3:4, 3:20, 3:23,
4:4, 4:8, 4:10,
4:12, 4:15, 4:20,
5:6, 5:10, 5:19
**OFFICIAL** [2] -
21:14, 21:23
**officials** [2] -
5:22, 9:4
**omnibus** [1] -
16:19
**one** [5] - 5:2, 17:4,
17:5, 17:20,
19:20
**ongoing** [2] -
15:14, 15:24
**open** [1] - 12:5
**opening** [1] -
19:19
**operated** [1] -
7:18
**opposition** [1] -
17:9
**order** [12] - 2:14,
2:15, 2:19, 2:25,
3:8, 7:16, 9:6,
10:13, 11:1,
11:5, 11:11,
13:8
**otherwise** [2] -
7:16, 9:16
**outside** [1] - 7:14
**oversight** [1] -
9:15

## P

**p.m.** [2] - 2:1,
21:6
**page** [1] - 21:18
**pages** [1] - 19:19

**paragraph** [1] -
19:22
**part** [2] - 5:15, 7:9
**parties** [3] - 3:5,
18:15, 19:9
**party** [4] - 4:22,
5:3, 5:5, 8:16
**passes** [1] - 5:17
**past** [3] - 4:18,
4:24, 14:11
**pathway** [1] - 4:7
**pay** [1] - 19:24
**pending** [2] -
11:13, 12:18
**people** [3] - 8:20,
9:15, 9:16
**perhaps** [3] -
5:14, 6:1, 7:6
**period** [2] - 7:13,
12:19
**persist** [1] - 7:5
**personal** [1] - 6:8
**perspective** [2] -
2:25, 5:15
**persuade** [2] -
9:18, 10:11
**persuaded** [1] -
8:2
**phone** [1] - 6:8
**phones** [2] - 3:10,
7:23
**pick** [1] - 14:20
**place** [1] - 9:11
**plan** [1] - 4:19
**point** [3] - 7:9,
9:18, 17:20
**points** [2] - 17:4,
19:6
**population** [1] -
10:6
**position** [7] -
2:18, 8:5, 10:2,
10:11, 10:12,
11:4, 14:18
**possibility** [1] -
15:17
**preliminary** [7] -
15:7, 18:16,
18:20, 19:16,
19:17, 20:1,
20:3
**prepared** [2] -
2:15, 11:1
**Present** [1] - 1:20
**present** [3] - 2:10,
3:6, 6:4
**pretrial** [18] -
5:18, 9:13, 15:3,
15:5, 16:11,
16:14, 16:18,

16:21, 17:2,
17:4, 17:8,
17:16, 18:2,
20:7, 20:11,
20:13, 20:14,
20:18
**Pretrial** [6] - 1:22,
3:1, 3:8, 4:23,
5:4, 9:20
**pretty** [1] - 19:5
**previously** [2] -
2:13, 7:18
**PROBATION** [12]
- 3:4, 3:20,
3:23, 4:4, 4:8,
4:10, 4:12, 4:15,
4:20, 5:6, 5:10,
5:19
**Probation** [1] -
1:21
**problems** [1] - 4:6
**proceedings** [3] -
11:13, 21:6,
21:18
**produced** [1] -
16:9
**productively** [1] -
20:22
**Professional** [1] -
21:16
**professionals** [1]
- 9:15
**proposed** [4] -
4:22, 15:7, 15:8
**protections** [1] -
9:10
**provided** [1] -
5:24
**provisos** [1] -
5:24
**public** [1] - 7:7
**pursuant** [1] -
21:17
**put** [5] - 9:10,
9:24, 14:16,
17:25, 19:2

## Q

**qualified** [1] -
3:19
**queries** [1] -
15:18
**quicker** [1] - 14:2
**quite** [2] - 5:1,
7:20
**quote** [1] - 7:17

## R

**read** [1] - 8:23
**really** [1] - 20:1
**reason** [1] - 5:4
**reasonably** [2] -
10:17, 10:18
**recent** [1] - 19:4
**recess** [1] - 21:4
**recognize** [1] -
4:23
**recommend** [1] -
4:24
**record** [6] - 8:9,
8:10, 10:14,
16:5, 17:25,
19:4
**regard** [1] - 15:18
**Registered** [1] -
21:16
**regular** [1] - 20:14
**regulated** [1] -
8:25
**regulation** [1] -
9:21
**regulations** [1] -
21:19
**related** [1] - 3:17
**relates** [1] - 15:25
**relating** [1] - 16:4
**relation** [1] -
15:14
**release** [4] - 2:15,
2:19, 3:7, 11:14
**released** [2] - 9:3,
10:16, 11:10
**releasing** [1] -
6:24
**remain** [2] - 10:4,
11:19
**remained** [1] -
12:5
**remains** [1] -
10:24
**remanded** [2] -
11:12, 21:3
**remember** [2] -
17:15, 20:5
**remind** [1] - 11:21
**remove** [1] - 4:6
**removed** [1] -
4:12
**replicate** [1] -
7:14
**replies** [1] - 16:15
**reported** [1] -
21:18
**REPORTER** [2] -
21:14, 21:23
**Reporter** [1] -

21:16
**reports** [1] - 6:21
**reputation** [1] -
6:21
**require** [1] - 19:11
**required** [2] -
10:23, 15:18
**requirements** [1]
- 6:24
**requiring** [1] -
6:11
**reside** [1] - 7:19
**residence** [3] -
3:13, 3:19, 6:25
**respect** [5] - 3:2,
4:22, 9:24, 10:1,
19:16
**respond** [2] -
15:18, 15:20
**response** [2] -
16:13, 20:18
**responses** [1] -
15:9
**restrictive** [1] -
9:25
**retired** [1] - 6:6
**review** [1] - 2:14
**rewriting** [1] -
19:2
**risk** [1] - 7:8
**RPR** [1] - 21:22
**rule** [2] - 13:1,
13:2
**ruled** [3] - 2:13,
13:3, 13:4
**ruling** [5] - 8:15,
8:22, 10:15,
10:24, 13:5
**run** [3] - 6:15,
6:16, 9:6
**runs** [1] - 6:6

## S

**safety** [3] - 9:11,
10:18, 10:22
**satisfied** [1] -
5:24
**saw** [1] - 3:25
**schedule** [1] -
17:1
**scheduling** [2] -
11:16, 11:20
**second** [1] -
19:22
**secrecy** [1] - 7:17
**security** [1] - 9:11
**see** [2] - 4:17,
11:16
**seem** [1] - 11:17

**sent** [1] - 15:12
**sentences** [1] -
19:21
**separate** [2] -
10:7, 19:15
**separately** [1] -
19:14
**September** [12] -
1:8, 13:4, 13:9,
13:11, 13:14,
13:20, 14:11,
16:7, 16:8,
16:10, 16:12,
20:12
**serve** [2] - 5:13,
8:16
**Services** [3] -
1:21, 3:2, 4:23
**services** [1] - 9:14
**set** [5] - 2:18,
3:24, 9:23,
10:20, 11:9
**severed** [1] - 6:11
**shortly** [1] - 15:15
**show** [1] - 10:22
**shroud** [1] - 7:17
**simple** [1] - 18:21
**simply** [1] - 10:9
**simultaneous** [4]
- 4:14, 16:17,
18:8, 20:7
**situation** [1] -
17:15
**six** [1] - 13:15
**small** [2] - 6:6, 6:7
**smart** [3] - 3:9,
3:10, 3:20
**solid** [1] - 7:7
**sometimes** [1] -
9:2
**somewhat** [1] -
11:21
**son** [2] - 6:18
**sorry** [2] - 12:25,
20:8
**sort** [4] - 3:16,
7:2, 7:17, 9:11
**sorts** [1] - 9:2
**sound** [2] - 4:5,
4:9
**sounds** [2] - 5:17,
13:25
**space** [1] - 9:5
**specifically** [1] -
5:3
**speedy** [6] - 12:6,
12:10, 17:8,
17:16, 17:17,
18:2
**Speedy** [1] - 18:4

**spend** [1] - 19:10
**staff** [1] - 9:14
**stand** [1] - 15:11
**standard** [3] - 18:25, 19:1, 19:20
**standing** [1] - 2:6
**stands** [2] - 3:2, 10:14
**start** [3] - 14:10, 14:15, 14:21
**started** [1] - 12:3
**starting** [2] - 12:11, 16:19
**statements** [1] - 19:19
**STATES** [2] - 1:1, 1:3
**States** [6] - 1:12, 1:14, 2:4, 2:7, 21:16, 21:19
**stations** [2] - 3:9, 3:21
**status** [1] - 11:17
**still** [6] - 5:13, 6:6, 12:2, 12:7, 15:14, 15:24
**stood** [2] - 11:22, 11:23
**stop** [1] - 8:24
**stopped** [1] - 11:21
**Street** [2] - 1:15, 1:19
**stringent** [5] - 2:16, 5:2, 6:10, 7:21, 10:20
**strip** [1] - 3:13
**striving** [1] - 10:7
**submission** [2] - 3:25, 19:15
**submissions** [2] - 16:14, 20:17
**submit** [3] - 3:5, 19:12, 19:14
**sufficiently** [1] - 7:8
**suitability** [2] - 5:14, 5:15
**Suite** [1] - 1:19
**super** [2] - 8:18, 8:19
**superseding** [1] - 15:17
**Supervision** [1] - 1:22
**suppose** [1] - 2:17
**surmises** [2] - 11:6, 11:8

**T**

**system** [2] - 3:16, 3:24
**systems** [1] - 9:10

**table** [1] - 2:11
**tablets** [1] - 8:21
**technologies** [1] - 3:14
**term** [1] - 7:24
**terms** [3] - 3:10, 10:25, 11:24
**that'll** [1] - 16:19
**THE** [58] - 1:1, 1:1, 1:11, 2:8, 2:13, 3:1, 3:12, 3:22, 3:25, 4:5, 4:9, 4:11, 4:14, 4:16, 4:21, 5:9, 5:12, 5:20, 6:16, 8:7, 8:10, 8:24, 10:3, 10:14, 12:9, 12:13, 12:16, 12:18, 12:21, 12:24, 13:1, 13:7, 13:11, 13:15, 13:18, 13:20, 14:4, 14:9, 14:15, 14:25, 15:3, 15:16, 15:22, 16:4, 16:8, 16:25, 17:14, 17:25, 18:17, 18:20, 18:24, 19:8, 20:14, 20:16, 20:20, 20:22, 20:25, 21:3
**themselves** [1] - 16:2
**third** [4] - 4:22, 5:3, 5:5, 8:16
**third-party** [4] - 4:22, 5:3, 5:5, 8:16
**three** [2] - 12:2, 19:21
**Thursday** [5] - 1:8, 5:8, 12:22, 13:6, 13:10
**tinkering** [1] - 19:8
**today** [6] - 2:17, 4:18, 12:17, 14:10, 16:6, 20:23
**together** [3] - 11:4, 15:16,

20:17
**toll** [2] - 12:6, 17:7
**tolled** [2] - 12:1, 17:17
**tolling** [4] - 18:1, 18:5, 18:8, 18:11
**tone** [1] - 11:7
**totality** [1] - 7:15
**track** [1] - 19:4
**transcript** [2] - 21:17, 21:18
**transcription** [1] - 1:25
**trial** [11] - 12:6, 12:10, 14:9, 14:15, 14:22, 16:23, 17:8, 17:17, 18:2, 19:20
**Trial** [1] - 18:4
**tricky** [1] - 9:5
**true** [1] - 21:17
**trying** [1] - 6:22
**Tuesday** [1] - 15:10
**TV's** [1] - 3:9
**TVs** [1] - 3:20
**two** [3] - 17:4, 18:19, 19:21
**type** [1] - 9:21
**typically** [1] - 19:24

**U**

**U.S** [1] - 1:21
**U.S.C** [2] - 21:17
**unable** [3] - 2:23, 10:11, 10:19
**unacceptable** [2] - 5:4, 5:7
**unauthorized** [1] - 9:9
**uncertainty** [1] - 5:11
**under** [7] - 2:25, 7:18, 9:22, 9:25, 10:12, 10:16, 18:4
**unfortunately** [2] - 2:24, 8:15
**UNITED** [2] - 1:1, 1:3
**United** [6] - 1:12, 1:14, 2:4, 2:7, 21:16, 21:19
**unwilling** [1] - 2:23
**up** [5] - 3:24, 4:2,

10:22, 16:6, 19:1
**upstanding** [1] - 6:21
**USPO** [1] - 3:6

**V**

**versus** [1] - 2:4
**Vickie** [1] - 1:22, 3:6
**victim** [1] - 7:6
**victims** [1] - 7:6
**view** [3] - 6:19, 7:10, 7:11
**voir** [3] - 15:7, 19:18, 20:3

**W**

**Wednesday** [1] - 16:15
**week** [1] - 16:13
**whatsoever** [3] - 6:20, 7:1, 7:21
**willingness** [2] - 5:13, 5:15
**wirelessly** [1] - 8:1
**wish** [1] - 16:11
**witness** [1] - 15:14
**witnesses** [1] - 7:5

**Y**

**years** [2] - 14:6, 17:15

**§**

**§** [1] - 21:17