```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                          NORTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,     )
                                   )
 5            vs.                  )   CRIMINAL CASE NO.
                                   )   1:23-cr-00278-JKB-1
 6   CHRISTOPHER KENJI BENDANN     )

 7

 8                       FRIDAY, AUGUST 18, 2023
                            Courtroom 7B
 9                        Baltimore, Maryland

10                         INITIAL APPEARANCE

11   BEFORE:  THE HONORABLE BRENDAN A. HURSON, Magistrate Judge

12   On Behalf of the United States:

13       COLLEEN E. MCGUINN, ESQUIRE
         Office of the United States Attorney
14       36 South Charles Street, 4th Floor
         Baltimore, MD 21201
15
     On Behalf of the Defendant:
16
         KOBIE FLOWERS, ESQUIRE
17       MICHAEL ABRAMS, ESQUIRE
         Brown, Goldstein, Levy
18       1331 Pennsylvania Avenue N.W.
         Suite 555 South
19       Washington, D.C.  20004

20

21   _____
              Proceedings Recorded by Audio Recording
22       Transcript Produced by Computer-Aided Transcription

23          Reported by:  Kassandra L. McPherson, RPR
                   Federal Official Court Reporter
24              101 W. Lombard Street, 4th Floor
                      Baltimore, MD 21201
25                       (410) 962-4544
```

```
1                    P R O C E E D I N G
2                         11:10 a.m.

3              THE COURT:  Good morning, everybody.  Please be
4    seated.  And Government, please call the case.
5              MR. FLOWERS:  Good morning, Your Honor.
6              MS. MCGUINN:  Your Honor, good morning.  Special
7    Assistant United States Attorney Colleen McGuinn on behalf of
8    the Government, calling for this Court United States of America
9    versus Christopher Bendann.  This is criminal case number
10   JKB-23-278.
11             THE COURT:  Good morning to you.
12        And for the defense?
13             MR. FLOWERS:  For the defense, Your Honor, good
14   morning.  Kobie Flowers on behalf of Mr. Christopher Bendann.
15   I'm joined at counsel table by my co-counsel, Mr. Michael
16   Abrams.
17             THE COURT:  Well, good morning to all of you.  And
18   particularly to you, Mr. Bendann.
19        Everybody can be seated.
20        All right.  So Mr. Bendann, we are here today because a
21   grand jury of this federal court has returned an indictment
22   against you.  An indictment is a charging document that sets out
23   a series of allegations that the government has made regarding
24   violations of federal law.
25        I'm aware that there has been prior state proceedings that
```

1  may or may not be related to this.  This is, as your lawyer I'm

2  sure has explained, federal court; essentially starting over.

3      What we're going to do today is go through the charges, go

4  through the possible penalties.  And I want to make clear, today

5  is not your trial, it's not a motions hearing, but it's still a

6  very important day.  So if there's anything that you need to

7  talk to your lawyer about or lawyers about you can just raise

8  your hand and I'll give you the time that you need to do that.

9      We're going to then discuss some important constitutional

10  rights that you have.  We're going to address the topic of

11  counsel in this federal case, and then we're going to move on to

12  the question of detention pending what happens next in this

13  case.

14      Most importantly, do you understand what I've said so far?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  Okay.  Can you tell me the year, just the

17  year that you were born?

18          THE DEFENDANT:  1984.

19          THE COURT:  All right.  Are you able to read, write

20  and understand the English language?

21          THE DEFENDANT:  Yes, I am, Your Honor.

22          THE COURT:  Are you under the influence of any

23  substance or do you have any medical condition that impairs your

24  ability to understand what I'm saying right now?

25          THE DEFENDANT:  No, I'm not.  No, I do not, Your

1  Honor.

2        THE COURT:  You feel like you hear me and you

3  understand what we're doing here today?

4        THE DEFENDANT:  Yes, I do.

5        THE COURT:  Okay.  All right.  Let's get to the

6  charges that are alleged here in federal court.  Do you have a

7  copy of the indictment?

8        THE DEFENDANT:  Yes, I do, Your Honor.

9        THE COURT:  And what I'm looking at, to be clear, is

10  case 23-cr-278-JKB, Document Number 1.  And that's what you

11  have?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  All right.  So this indictment alleges six

14  violations of federal law.  Counts 1 through 5 allege

15  essentially the same allegation but on separate dates.

16  Specifically, Counts 1 through 5 allege that on September 16th,

17  2017; June 21st, 2018; August 26, 2018; January 2nd, 2019; and

18  February 9th, 2019 that you knowingly attempted to and did

19  employ, use, persuade, induce, entice, and coerce a minor victim

20  to engage in sexually explicit conduct, as defined under the

21  relevant federal law for the purpose of producing a visual

22  depiction of such conduct, knowing and having reason to know

23  that such a visual depiction was produced and transmitted using

24  materials that were mailed, shipped, and transmitted in

25  interstate and foreign commerce by means, including by computer,

1    and that such visual depictions were actually transported and

2    transmitted using any means and facility of interstate commerce,

3    and in and affecting interstate commerce, all in violation of 18

4    U.S.C. 2251(a).

5         So Counts 1 through 5, if you were to be convicted on

6    Counts 1 through 5, these carry the same possible penalty.  That

7    possible penalty is a mandatory minimum of 15 years in federal

8    custody, up to a maximum of 30 years in federal custody.

9         As is the case with any federal conviction, if you were

10   convicted you would be subject to a term of supervised release,

11   which is sort of a fancy word for probation, that would follow

12   any incarceration.  Counts 1 through 5 carry a five-year

13   mandatory term of supervised release up to the possibility of a

14   lifetime commitment to supervised release.  Also, Counts 1

15   through 5 carry the possibility of a $250,000 fine.

16        Count 6 alleges that in and between September 1st, 2017,

17   and January 23rd, 2023, in the District of Maryland, that you

18   knowingly possessed material that contained an image of child

19   pornography as defined under the relevant law, which image had

20   been mailed, shipped, and transported using any means or

21   facility of interstate and foreign commerce, and in and

22   affecting interstate and foreign commerce by any means,

23   including by computer.  And that it was produced using materials

24   that had been mailed, shipped, and transported in and affecting

25   interstate and foreign commerce by any means, including by

1  computer.

2      Count 6, along with Counts 1 through 5 in the indictment,

3  provides a little bit more specific detail as to what the images

4  are, what they're named, and where they were found.  And that is

5  the same with Count 6.

6      If convicted on Count 6 the possible penalty carries, I

7  believe, zero to 10 years in custody; five years of supervised

8  release up to life on supervised release; and up to a $250,000

9  fine.  And in federal court, if you are convicted on any count

10  there is a required $100 special assessment per count.

11      There's also a forfeiture provision attached to this

12  indictment; not uncommon.  What it is, is that if you were to be

13  convicted the government would seek the forfeiture of the items

14  listed there and/or oftentimes substitute assets if those items

15  are not located.

16      Let me be clear that these penalties I've listed are not

17  necessarily what you would get if you were convicted.  And

18  again, I'm not saying you will be convicted, but do you

19  understand what the charges are and what the possible penalties

20  are?

21          THE DEFENDANT:  Yes, I do, Your Honor.  Thank you.

22          THE COURT:  Okay.  So you have many important

23  constitutional rights, and we're going to talk about two of them

24  right now.

25      One is your Fifth Amendment right to remain silent.  You do

1  not have to give any statements to the government or government

2  agents about your charges.  You do not have to answer any

3  questions posed to you by the government.

4      If you were to give a statement or you were to answer any

5  questions, anything you say could be used against you in court.

6      Do you understand your Fifth Amendment right to remain

7  silent?

8          THE DEFENDANT:  Yes, I do, Your Honor.

9          THE COURT:  All right.  Under the Sixth Amendment you

10  have the right to be represented by an attorney at all stages of

11  this case starting, obviously, now and moving forward.

12      You can hire an attorney or you can ask, if you can't

13  afford to hire an attorney, to have one appointed to you.

14      I see that Mr. Flowers is here next to you which indicates

15  to me that you are going to retain or have retained the services

16  of Mr. Flowers; is that correct?

17          THE DEFENDANT:  Yes, I have, Your Honor.

18          THE COURT:  And, Mr. Flowers, you concur?

19          MR. FLOWERS:  Yes, I concur, Your Honor.  You know, we

20  just found out about the indictment this morning at 5 a.m.  So

21  I've been representing Mr. Bendann in his state case, and

22  there's also a side federal case.  This indictment is something

23  we certainly need to speak about my ongoing representation for

24  this.

25      So what I'd like to do, Your Honor, with the Court's

1   indulgence, is enter a conditional entry of appearance, and once

2   we've kind of work out things return to the court and let you

3   know I'm either in or I'm out with respect to this new

4   indictment today.

5            THE COURT:  Understood.  I completely understand.  I

6   think the way we can proceed is -- first, I have signed an order

7   to unseal the indictment and so the case should be unsealed.  If

8   it isn't already it should be now.

9        Second, you can enter your appearance in the case.  And

10  obviously if circumstances require you to move to withdraw, that

11  can be done by motion and the request can be made to either

12  substitute counsel or, if conditions are appropriate, to seek

13  appointment of court-appointed counsel.  But I'll ask that you

14  do enter that appearance.  But it's understood that there needs

15  to be some conversations between you and your client.

16       That said, Mr. Bendann, I'm confident you understand your

17  Sixth Amendment right to counsel and you understand what your

18  lawyer just said regarding representation?

19            THE DEFENDANT:  Yes, I do, Your Honor.  Thank you.

20            THE COURT:  Okay.  All right.  So the next issue is

21  what do we do -- well, let me pause for a second and remind the

22  Government as required by Rule 5(f), the United States is

23  ordered to produce all exculpatory evidence to the defendant

24  pursuant to Brady versus Maryland and its progeny.  Not doing so

25  in a timely manner may result in sanctions, including the

1  exclusion of evidence, adverse jury instructions, dismissal of

2  charges, contempt proceedings, vacating a conviction, or

3  disciplinary action against the prosecution.  And I will enter

4  an order to that effect now.

5       So let's move on to the next question.  What is the

6  Government's position on pretrial detention?

7            MS. MCGUINN:  Your Honor, the Government is seeking

8  detention.

9            THE COURT:  And what is the basis that the Government

10  is seeking pretrial detention under?

11            MS. MCGUINN:  Your Honor, the Government is seeking

12  detention based on the rebuttable presumption under

13  3142(e)(3)(E) because this case involves a minor and is

14  specifically charged under 18 U.S.C. 2251.

15            THE COURT:  So the presumption would kick in at the

16  hearing itself.  And I think -- it is 3142(f)(1)(E)?  I was just

17  looking at it as I ran up here, that would allow the government

18  to seek detention in the first place?

19            MS. MCGUINN:  Yes.

20            THE COURT:  Okay.  And -- okay.  So the Government's

21  moving under 3142(f)(1)(E), but reminding me that if there is a

22  hearing and when there's a hearing --

23            MS. MCGUINN:  Yes.

24            THE COURT:  And I don't mean to, you know, be too

25  persnickety, but I want to make sure that we're on the same

 1  page.

 2          MS. MCGUINN:  Yes, Your Honor.

 3          THE COURT:  So Mr. Bendann, what the Government is

 4  saying is this.  Under the Bail Reform Act, the relevant law

 5  that controls pretrial release in federal court, the government

 6  is only allowed to seek the pretrial detention of a defendant

 7  under a few specific circumstances.

 8      One of those specific circumstances is outlined in 18

 9  U.S.C. 3142(f)(1)(E) which is if an offense alleged involves --

10  allegedly involves a minor victim then the government has the

11  right to seek your detention.  Doesn't necessarily mean that

12  they succeed in that, doesn't necessarily mean that you are to

13  be detained, but it does allow the government to make that

14  motion, which they have now made.

15          Mr. Flowers, what's your position on pretrial detention?

16          MR. FLOWERS:  Your Honor, my position is that

17  Mr. Bendann should be released on the pretrial condition that

18  he's already been released on.  He's been, with respect to the

19  state case, has had perfect compliance for six months.

20      I understand that the Government is also going to ask this

21  Court for a continuance.  I oppose that continuance because the

22  Government cannot make a threshold showing that Mr. Bendann will

23  be detained given that he has already been released under

24  essentially these same charges.  I understand that there's a

25  rebuttable presumption.

1    Our position is that presumption has already been

2    persuasively rebutted because we have a judge who has released

3    Mr. Bendann, again, on essentially the same charges.  In fact,

4    in the state case Mr. Bendann is charged with rape.  And I have

5    a copy of the indictment, so I can make a more fulsome argument

6    if the Court is interested in that.

7         But at a high level the defense is asking for Mr. Bendann

8    to be released on the same conditions that he has complied with

9    for six months without fail; showed up to no less than nine

10   hearings, including sealed hearings in this courthouse without

11   issue.  And that the Government, again, cannot make that

12   threshold showing that somehow Mr. Bendann, who has no criminal

13   record, is a flight risk by preponderance of the evidence, and

14   is a danger by clear and convincing evidence.  So again, at a

15   high level that's the defense's position, Your Honor.

16            THE COURT:  I appreciate that.  I want to cut that up

17   a little bit.  Because first, your arguments are noted, and they

18   are arguments that tend to weigh on the question of pretrial

19   detention, whether it's appropriate or not.

20        Unfortunately, my reading of the Bail Reform Act, 3142(f),

21   says the hearing shall be held immediately upon the person's

22   first appearance before the judicial officer unless that person

23   or the attorney for the government seeks a continuance.  In that

24   situation, where the government seeks a continuance they have up

25   to three days, not including the weekend, to prepare.  And you

1    obviously have the right to ask for up to five days.

2        You made a representation; I'm going to kick it back over

3    to the Government as to whether you're asking for those

4    additional days.

5            MS. MCGUINN:  I am, Your Honor.

6            THE COURT:  Okay.  This question that you're raising

7    as to whether there needs to be any additional showing to get

8    those three days, unfortunately for you -- and I'm saying

9    unfortunately not because of my own opinion but just with

10   respect to your own argument.

11           MR. FLOWERS:  I understand, Your Honor.

12           THE COURT:  The Bail Reform Act doesn't have any

13   limitation in it.  I have not done extensive research on it, but

14   my understanding, and certainly the past practice in this court

15   has been if the government seeks that continuance they get that

16   continuance.  And if you seek that continuance, you get that

17   continuance.

18           MR. FLOWERS:  Right.

19           THE COURT:  Do you have any authority that --

20           MR. FLOWERS:  I do, Your Honor.

21           THE COURT:  Okay.

22           MR. FLOWERS:  Because I anticipated this issue coming

23   up.  And I do have some authority I'd like to cite for the Court

24   a Ninth Circuit case, but it's the best that we could do.  It's

25   768 F.2nd 1141.  Again, that's a Ninth Circuit case that came

1    out in 1985.  And in that case, I would just like to kind of

2    read the key parts of that case as the Ninth Circuit was -- gone

3    ahead and interpreting the Bail Reform Act with respect to this

4    very issue.

5          The Ninth Circuit said, quote, "It's confirmed by the

6    explanation in the senate report that provisions for continuance

7    were to permit a limited period of time for preparation for the

8    hearing," and this is the key piece, "Particularly if the

9    defendant was arrested soon after the commission of the offense

10   which he is charged," unquote.  And I'm reading from page 1144.

11         So I want to stop there for a minute and take a beat,

12   there's a couple other points that this case brings out, and I

13   also want to talk about the practice at this courthouse.

14         This first point here, this idea that when the defendant or

15   the accused was arrested soon after the commission of the

16   offense, that's certainly not what has happened here.  These

17   charges go all the way back to 2017.  The possession charges, as

18   the Court is well aware, are simply because they were able to

19   take Mr. Bendann's electronic devices.  And that's the only way

20   we even get up to even January of 2023.

21         So the Ninth Circuit has explained again, it makes sense

22   that you would have a delay when the charge -- when the alleged

23   offense happened and then the person is arrested because people

24   need to figure out who was who and what is what.  That's not the

25   case here.  In fact, Judge Hurson, the government first arrested

08/18/2023 Bendann Initial Appearance

1    Mr. Bendann back in February of 2023.

2             THE COURT:  Well, the state government.

3             MR. FLOWERS:  The state government, right.  And then

4    what the state government did, was on February 1st of 2023,

5    there was a state arrest and SWAT team that entered

6    Mr. Bendann's house, and we'll get to that momentarily.  But

7    then on February 9th the federal government was involved and

8    they issued a search warrant to take the devices.

9        The point being, Judge Hurson, is that the government has

10   known about this case for at least six months by virtue of its

11   search warrant.  And we know that to get a search warrant

12   typically there is an investigation that precedes that, right.

13       So for the government to come into court today, having

14   issued a second -- or having issued an arrest warrant on its own

15   time, and then to say we need time to prepare, again, that goes

16   against, kind of, what the Ninth Circuit's reasoning says about

17   this particular part of the statute.  So that's point one.

18            THE COURT:  Well, let me stop you there.

19            MR. FLOWERS:  Yep.

20            THE COURT:  First, you know, if you're talking Ninth

21   Circuit 1985, we're in the Fourth Circuit.  I love the Ninth

22   Circuit states but that doesn't apply here.

23            MR. FLOWERS:  Right.

24            THE COURT:  And I understand your position with

25   respect to that sentence.  Which, if I recall, you said uses the

1  words particularly if, which doesn't seem to necessarily be a

2  condition.  It's just an adjective of sorts to describe, you

3  know, what a condition might look like.

4      So that said, I would ask the Government if -- this unique

5  question that you just posed with respect to the delay, if you

6  want to be heard on that, I think that's --

7          MS. MCGUINN:  I will briefly say, Your Honor, that the

8  Government has access to the evidence in this case officially

9  less than a week, or just about a week that we've been able to

10 look at devices and electronic evidence.  So we haven't -- the

11 Government, being the U.S. Attorney's Office and the FBI, have

12 not been investigating this case for six months outside of that.

13 Maybe some limited information, understanding what the state had

14 already done, maybe tagged on to some of the things they've

15 done, but not really.

16     This is, as you know, production -- essentially it's sexual

17 exploitation of child but production of child pornography.  You

18 don't have child pornography unless you have the electronic

19 evidence.  And as I indicated, the Government has not had access

20 to that evidence only for about a week.  And, in fact, the

21 search is ongoing of what is approximately definitely more than

22 10 electronic devices.  So it's much different than how counsel

23 is couching this; that we've just been sitting here twiddling

24 our thumbs for the last six months when, in fact, our hands have

25 been tied for the last six months.

```
 1              MR. FLOWERS:  If I may respond.

 2              THE COURT:  Briefly.  That's fine.

 3              MR. FLOWERS:  Thank you, Your Honor.  I appreciate

 4   what the Court is saying, that look, this is a Ninth Circuit

 5   case it's not a Fourth Circuit case.  I certainly understand the

 6   Court's position that it's not binding on this Court.  But the

 7   Court also said there's really no case law that tells the Court

 8   one way or the other where to go.  So we've broughten -- we

 9   brought, rather, case law to the Court for it to consider,

10   right.

11       And I think what's kind of most important here is that the

12   Ninth Circuit did go into and talk about the legislative history

13   of the Bail Reform Act, and it talked about how it's to protect

14   the defendant because he's the one who remains detained pending

15   this continuance.  You know, he's been out with these charges

16   over his head for six months and has never had a problem.

17              THE COURT:  Which I think is something that would be

18   very relevant at a detention hearing.  I think the only problem

19   I'm having is -- just the issue is when is that detention

20   hearing to be held.  Because I will certainly take notice of

21   everything you're saying, which is that he has been on some form

22   of release in state court for what appears to be very serious

23   charges.  He also has, as you said, has shown up to numerous

24   court appearances, has not left the area without authorization,

25   at least according to your representations, which, again, I will
```

 1  credit.  These are all very -- I'm sure the Government would

 2  even agree, compelling arguments at a detention hearing.  It's

 3  just the issue we're having right now is when do we have the

 4  detention hearing.

 5       And I am not convinced by the Ninth Circuit authority that

 6  that detention hearing can happen today because the Government

 7  does, under the statute -- and I agree that my question about

 8  case law was because the language of the statute is so plain I'm

 9  not sure we even get there, but that's what I was inquiring

10  about.

11       I will --

12            MR. FLOWERS:  Your Honor, just one last point about

13  that.

14            THE COURT:  Please.  No, I want you to make your

15  record so please go ahead.

16            MR. FLOWERS:  Very well.  Thank you very much, Your

17  Honor.

18       I understand exactly what the statute says, and again, I

19  provided this case law.  The fundamental problem we have here,

20  Your Honor, is essentially what the government is allowed to

21  come and do if the court doesn't require the government to at

22  least to make a threshold showing.  And again, I'm not going to

23  have a full-blown detention hearing, but I haven't heard a

24  threshold showing that he is a danger or a flight risk.  Because

25  if we don't allow for that threshold showing we allow for what

1  happened here today.  The government gets to come in at five

2  o'clock in the morning, issue an arrest warrant, knowing that --

3            THE COURT:  Which let's not forget, which is based on

4  a grand jury's probable cause finding.  So I want to make clear,

5  we're not creating this out of necessarily thin air.  That the

6  entire Bail Reform Act is triggered by the return of indictment

7  or a sworn complaint.

8            MR. FLOWERS:  That's right.

9            THE COURT:  But I take your point.

10            MR. FLOWERS:  And please, and I just want to amplify

11  it a little bit because it's really important.  We all

12  understand that certainly there's been a grand jury who has

13  heard evidence, without a defense attorney present, and has

14  issued an indictment.  We also understand that that's a process

15  that the government and the government alone controls.  That the

16  government all the time decides when to bring a case and when

17  not to bring a case while working with the grand jury.

18       Here, the government decided to bring this case today,

19  arrest him at 5 a.m. in the morning on a Friday.  And Your Honor

20  should take into account they did the same thing, albeit the

21  state government, six months ago on February the 1st.

22       And so what we have here, Your Honor, is an abuse of power

23  really, because they know he's been out for six months.  They

24  know that he has counsel.  He's made every single hearing.  They

25  know that if and when we get to a detention hearing they're

1  going to have a very difficult time proving that there are not

2  conditions of release for him to be out on.  Knowing that, they

3  come in on a Friday morning with a SWAT team; trained lasers on

4  him and his father who's in the courtroom today.  A man who has

5  no criminal record.  They bring him here and they say hey, we're

6  going to detain you for as long as we can knowing that you're

7  going to get out.

8          THE COURT:  Let me stop you right there.  I certainly

9  appreciate the argument.  I appreciate the position that you're

10 in and the position your client is in.

11     And Mr. Bendann, let me start by saying one thing.  What

12 I'm saying in my findings on this particular issue has no

13 bearing on whether you will ultimately be detained.  That is a

14 question that is answered under other sections of the Bail

15 Reform Act.

16     And let me be clear.  I understand your attorney's

17 frustration with the process but there's really nothing

18 necessarily abnormal about the way the process has unfolded here

19 with respect to just the literal return of an indictment in this

20 case and then you're brought in for an Initial Appearance.  And

21 the statute is clear that the government has that time to

22 prepare.

23     It is not uncommon in this courthouse that there are

24 arrests, that the Bail Reform Act is invoked, that that time

25 period is invoked, and that there is a delay between the arrest

1   and the detention hearing.  And oftentimes people are released.

2   Oftentimes they are not.

3         What I am saying right now is simply that I will give the

4   Government that additional time.  And the question then becomes

5   what date will it be.  It has to be Monday, Tuesday.  And, you

6   know, I don't know how many days the Government needs, but I

7   certainly credit Counsel's argument that even though your

8   investigation of the literal federal charges, in essence, the

9   federal hook if you will, maybe just started, that your

10  investigation into the defendant, you're awareness of the

11  defendant's situation and the community, your awareness of the

12  defendant's release in the state case, that can be new to the

13  government so I don't know how much preparation is needed.

14        But let me say one more thing before you respond.  I am

15  sitting here with a Pretrial Services report in front of me

16  which was just completed -- thank you very much, Pretrial, for

17  your prompt work -- that recommends detention.  And there's a

18  lot of information here that obviously the Court has not had an

19  opportunity to review.

20        So while the Bail Reform Act, as I think your lawyer

21  pointed out, is certainly meant to move the process along for

22  the defendant, I want to make clear that this is not a case that

23  is quickly disposed of by a judge sitting in my position.  You

24  need to review this material; you need to make the necessary

25  inquiries and obviously listen to the arguments from counsel.

1        So with respect to the date of the hearing, what is the

2   Government's position?  Do we have a date that's open?  Have you

3   talked about a date?

4            MS. MCGUINN:  We have not because -- due to counsel

5   wanting to have it today.  So we just did not have that

6   discussion Your Honor.  I'm available Monday.  I am available

7   certainly Tuesday.

8            THE COURT:  Well, Monday sounds like it might be the

9   day to do it given the arguments that have been raised.  What's

10  the Court's schedule on Monday look like?

11           THE CLERK:  Your Honor, we can do Monday at 10 a.m.

12           MS. MCGUINN:  That's fine for the Government.

13           THE COURT:  Are you available?

14           MR. FLOWERS:  I'll make myself available.  I actually

15  have a deposition scheduled there that I will cancel.

16        I do want to, just for purposes of the record, just be

17  clear to a couple things, Your Honor.

18           THE COURT:  Briefly.  The other issue, which is not --

19  let me be clear.  I'm not going to put this as a basis for not

20  having it today, but this Court's calendar is absolutely packed

21  all day.  And so having decided this issue I'm happy to let you

22  make your final points but I've got to move forward.

23           MR. FLOWERS:  Your Honor, I understand that you

24  decided the issue, but for purpose of the record I definitely

25  need to at least provide some information, given what the Court

1  has said.

2      First off, I go back to the Ninth Circuit case at 768 F.2d

3  1141.  That court said specifically, and I quote at page 1146,

4  "The liberty interest of the individual who has yet to be tried

5  should not be subordinated to the scheduling problems of counsel

6  or the courts."  So I just wanted to make sure that that was

7  there for the record.

8      The Court also mentioned the Pretrial Services report

9  recommends detention.  I want to submit to the Court what I'm

10 going to mark as Defense Exhibit 3 and Defense Exhibit 2.

11     I'll provide copies to counsel.  But this is an order from

12 Judge -- may I approach, Your Honor?

13         THE COURT:  Oh, yeah.  Of course.

14         MR. FLOWERS:  This is an order from Judge Alexander,

15 along with a petition briefing from Judge Alexander who decided,

16 based off essentially the same -- the same case, to go ahead and

17 release Mr. Bendann.

18     So with respect to the Pretrial Services report that

19 recommends -- that recommends detention, again, you have a

20 circuit judge in Towson who recommended that this man be

21 released.

22     And then, finally, there's some misstatements in the

23 Pretrial Services report that I just want to correct on the

24 record.

25         THE COURT:  Well, that's probably a good idea to

 1   quickly do that now.  Have you talked to the Government about

 2   what those alleged misstatements are?

 3            MR. FLOWERS:  No, I haven't had a chance.  And

 4   misstatement might be overstated, it may be just -- it's just

 5   not as accurate as it could be.

 6            THE COURT:  Well, that's a different issue, so why

 7   don't we save that to Monday.

 8            MR. FLOWERS:  All right.

 9            THE COURT:  But if there is something that could be

10   elaborated on, that's not uncommon, just make sure -- and in

11   fact, I'll tell you this, and you know this, you've been around

12   this courthouse a little bit.  Pretrial Services would be happy

13   to hear any additions.  They'll take it, they'll add it into the

14   report.

15       One quick question I did have with respect to your client's

16   current conditions, just so it's on the record for Monday.  Is

17   there any sort of monitoring?  As you know, the Adam Walsh Act

18   does in certain circumstances, I believe this may be one,

19   require some sort of monitoring if someone is ultimately

20   released.  Is Mr. Bendann on some sort of monitoring in the

21   state system?

22            MR. FLOWERS:  Yes.  Mr. Bendann is on electronic

23   monitoring.

24            THE COURT:  Second question for the Government, and

25   you may not know the answer to this.  What is the status of the

1    state case now that this case has been federally charged?

2              MS. MCGUINN:  I don't.  I can't speak to that.  That's

3    a separate entity so I don't know.

4              MR. FLOWERS:  I can tell Your Honor, if the Court will

5    indulge me, we have a trial date set for December 14th.  We have

6    motions date for September -- trial date for December the 14th,

7    end of the year.  A motions date in a couple of weeks on

8    September the 6th.

9              THE COURT:  Okay.

10             MR. FLOWERS:  And also I would --

11             THE COURT:  Go ahead.

12             MR. FLOWERS:  If you're going to remand Mr. Bendann

13   back to custody I would ask that he be protected.  He was on

14   suicide watch when he was briefly -- we had to go through this

15   song and dance in the state court.  He was ultimately released.

16             THE COURT:  Uh-huh.

17             MR. FLOWERS:  He's got some mental health issues.  He

18   suffered a heart attack back in April because of the pressure of

19   fighting these cases when he was locked up.  So it's, again,

20   another reason why we would like to have a detention hearing

21   today.

22             THE COURT:  I understand.  That ruling has been made,

23   it's going to be Monday at 10 a.m.

24        But as to the health concerns, have you completed the

25   medical form?  Can you do that?  It's in front of you on the

1    table.

2        Mr. Bendann, here's what I'm going to do.  You are going to

3    be held in federal custody over the weekend.  You will be

4    returned to this courthouse Monday at 10 a.m. for your detention

5    hearing.  I will make the release order and the memo that was

6    filed in your state case a part of this record and it will be

7    available to the judge, whoever it is on Monday; may be me, may

8    be somebody else.

9            MR. FLOWERS:  I think it's Judge Coulson.

10           THE COURT:  Judge Coulson.  It'll be Judge Coulson on

11   Monday.  Be made available to Judge Coulson.

12       I will take your lawyer's -- we'll complete what's called a

13   medical -- we colloquially call it a medical form, where it's

14   listed any medications that you're on, any health needs that you

15   have.  And I'm going to tell you the same thing that I tell

16   everyone who comes in this courtroom, which is you will be taken

17   to a detention facility following this hearing.  Act as though

18   they did not receive any paperwork.  They're going to ask you

19   what your health concerns are.  Please be very vocal about that.

20   Let them know what your health concerns are, let them know what

21   your considerations are.

22       I'm going to take the representations that were just made

23   to me by your counsel, I'm going to contact the United States

24   Marshals and let them know specifically what was just told to me

25   in court so they will be aware of the situation and aware of the

1  past health and mental health issues.

2      This detention is, as you will see on this form, temporary

3  detention.  It is only in place until Monday at 10 a.m.  Monday

4  at 10 a.m. you will return to court; you will have a detention

5  hearing under the Bail Reform Act where the Government will have

6  to make its case for why you must be detained pretrial.

7      As you've heard them say, there is something called a

8  presumption of detention.  As your lawyer pointed out, that's

9  something that can be rebutted, and he's presented some of that

10 information today.  But that whole discussion about where you

11 will be pending your federal trial will happen on Monday at 10

12 a.m.

13     And all the arguments that your lawyer has raised I'm sure

14 will be repeated, and then some, on Monday, and then that

15 decision will be made.  So this is very much a temporary

16 detention order that's only in place until 10 a.m. on Monday.

17     And I'm going to tell you the following as well, which is

18 you have been in custody in the state prior to this your lawyer

19 has told me.  They do not have your health records.  I would

20 assume they do not have your health records from the state.  I

21 would assume, as you go into detention here for this brief

22 period until Monday at 10 a.m. that, again, you should not act

23 like they know anything about your case or anything about your

24 health concerns.  So make sure you are vocal to the intake folks

25 when you are brought in as to your health concerns.  And I know

 1   your lawyer knows how to handle that as well.

 2        And the location of your pretrial, I don't know where it

 3   will be.  It will more than likely be the Chesapeake Detention

 4   Facility but I'm not sure.  But I will contact the marshals

 5   immediately following this relaying the concern regarding

 6   suicide, regarding separation.  And I will tell you that I can

 7   assure you they will take that very seriously.

 8        Anything further from the Government?

 9             MS. MCGUINN:  Nothing from the Government, Your Honor.

10   Thank you.

11             THE COURT:  From you Mr. Flowers?  All your arguments

12   are preserved and, as always, well made.

13             MR. FLOWERS:  Thank you, Your Honor.

14        And I just want to make sure the two exhibits are part of

15   the record.

16             THE COURT:  Yes.

17             MR. FLOWERS:  I also finally want to make sure that

18   it's part of the record that I did speak with the Federal

19   Defender's Office, and they too are of the mind that there needs

20   to be a threshold showing before the granting of a continuance

21   by the government.

22             THE COURT:  The last question I have for you,

23   Mr. Flowers, before I forget.  If this is made part of the

24   record is anything in this memorandum of law that's in Exhibit

25   2, does that need to be sealed in any way?

1     MR. FLOWERS:  No, it doesn't.  It was filed in the

2  state court in Towson and the order obviously is a public order.

3     THE COURT:  Well, then I'll ask -- now I have Exhibit

4  2 and Exhibit 3.  Did I miss --

5     MR. FLOWERS:  I think that's right, Your Honor.

6     THE COURT:  I didn't miss Number 1?

7     MR. FLOWERS:  No, no.  We had some other exhibits, but

8  unfortunately were unable to do a hearing today so those

9  exhibits will stay in my folder.

10     THE COURT:  Well, I appreciate the arguments of both

11  sides and we're adjourned until our next proceeding.

12     And Mr. Bendann, you'll be back Monday morning.

13     THE DEFENDANT:  Thank you, Your Honor.

14          (The proceedings concluded at 11:45 a.m.)

15

16

17                 FTR CERTIFICATE

18     I, Kassandra L. McPherson, RPR, do hereby certify that
   the foregoing is a correct transcript of the audio-recorded
   proceedings in the above-entitled matter, audio recorded via FTR
19  Gold on 08/18/2023, and transcribed from the audio recording to
   the best of my ability and that said transcript has been
20  compared with the audio recording.

21

22                 Dated this 11th day of March 2025.

23                      -/s/
                 _____

24                 Kassandra L. McPherson, RPR
                 Federal Official Court Reporter

25